**Harry GIBSON et al., Plaintiffs,**

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.**

**Civ. A. No. 37900.**

United States District Court,
E. D. Michigan, S. D.

Oct. 10, 1973.

Allan Neef, Darden, Neef & Heitsch, Harry Gibson, Robert Houston, Lloyd E. Powell, Detroit, Mich., for plaintiffs.

Robert C. Winter, Clark, Klein, Winter, Parsons & Prewitt, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Plaintiffs are homeowners who have mortgages thereon with the defendant, First Federal Savings and Loan Association (hereinafter referred to as First Federal). These mortgages are insured by the Federal Housing Authority. Pursuant to the mortgage instruments, plaintiffs pay to defendant a monthly escrow amount for taxes and insurance premiums.

As to the escrow funds, plaintiffs claim that First Federal is in violation of federal regulations and the common law in two general respects:[1] (1) First Federal commingles the escrow funds it receives from plaintiffs with its general funds, invests these funds and pays no interest to the plaintiffs; (2) First Federal requires larger monthly escrow amounts than is necessary to pay taxes and insurance premiums when these become due. Plaintiffs seek an injunction, an accounting for interest, and return of excess escrow amounts.

Before the court now is the defendant's motion for summary judgment.

Before proceeding to the determination of this motion the court held a thorough evidentiary hearing. The parties were permitted fully to set forth their respective factual positions to illuminate the issues now before the court for determination.

### I

With respect to the plaintiffs' first claim, the court grants defendant's motion.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. First Federal agrees that it commingles the escrow funds with its general funds and that it does not pay interest to plaintiffs. Thus there is no issue as to a material fact under this claim.

The question is whether First Federal is required by law to segregate the escrow funds and to pay interest on them. The court concludes that it is not so required.

### A.

As noted in this court's earlier opinion,[2] First Federal is organized under the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461, et seq., and is regulated by the Federal Home Loan Bank Board, 12 U.S.C. § 1464. A regulation of this Board allows First Federal to collect the monthly escrow amount. 12 C.F.R. § 546.6–11 provides:

"A federal association may require that an equivalent of one-twelfth of the estimated annual taxes, assessments, insurance premiums and other charges on real estate security be paid in advance . . . to enable the association to pay such charges as they become due from the funds so received. . . ."

Further, since plaintiffs' mortgages are insured by the Federal Housing Authority, First Federal is obliged to fol-

---

1. A prior opinion reported at 347 F.Supp. 560 (E.D.Mich.1972), affirmed jurisdiction in this matter, based on 28 U.S.C. § 1337.

2. 347 F.Supp. 560 (E.D.Mich.1972).

low the regulations of the Department of Housing and Urban Development regarding the mortgage provisions in plaintiffs' mortgages. One such regulation *requires* First Federal to collect the monthly escrow amount. 24 C.F.R. § 203.23(a).

Plaintiffs do not contest the authority of First Federal to collect the monthly escrow amount. Plaintiffs do contend that certain federal regulations and the common law require First Federal to segregate the escrow funds and to pay interest on them.

Plaintiffs cite in support H.U.D. regulation 24 C.F.R. § 203.7(a), which provides:

> "Approval of a mortgage may be withdrawn at any time by notice from the Commissioner, by reason of
>
> \*   \*   \*   \*   \*   \*
>
> "(2) The failure of a nonsupervised mortgagee to segregate all escrow funds received from the mortgagors on account of ground rents, taxes, assessments, and insurance premiums, and to deposit such funds to a special account or accounts with a financial institution whose accounts are insured by the Federal Deposit Insurance Corporation or by the Federal Savings and Loan Insurance Corporation;
>
> "(3) The use of escrow funds for any purpose other than that for which they were received; . . ."

Plaintiffs contend that subsection (2) of this regulation requires First Federal to segregate its escrow funds. The court disagrees. Plainly the regulation applies only to "nonsupervised mortgagees." The term "supervised institution" is defined in 24 C.F.R. § 203.4(b):

> "A mortgagee approved as a supervised institution shall meet these requirements:
>
> "(1) The mortgagee shall be subject to the inspection and supervision of a governmental agency which is required by law to make periodic examinations of the mortgagee's books and accounts . . ."

Plainly, First Federal is "supervised" and thus not required by 24 C.F.R. § 203.7(a)(2) to segregate.[3] There is no regulation requiring First Federal to segregate.[4]

Plaintiffs further contend that subsection (3) of 24 C.F.R. § 203.7(a), quoted above, prohibits use of the escrow funds for investment purposes by First Federal. But the regulation does not expressly prohibit this practice. Rather, it prohibits application of the funds for purposes different from that for which they were received. Plaintiffs do not dispute that First Federal pays the taxes and insurance premiums with the escrow funds and that any excess it collects over the amount actually paid out for taxes and insurance is credited for future payments of these items. Thus, the escrow funds are used exclusively for the purpose for which they were received.[5]

**B.**

Plaintiffs also contend that the escrow funds are held in trust by First Federal, and that the common law therefore requires First Federal to segregate the funds and to pay interest on them. This court considers itself without jurisdiction to hear that claim for relief. As noted, jurisdiction to hear this case is founded upon 28 U.S.C. § 1337. This

---

3. In light of this interpretation of the regulation, it is unnecessary to consider the defendant's contention that the regulation deals only with the relationship between the institution and H.U.D., and thus does not confer any substantive rights of segregation to plaintiffs.

4. It is interesting that nonsupervised institutions are required to segregate. 24 C.F.R. § 203.4(c)(2). However, no parallel requirement for supervised institutions has been found in the regulations.

5. A violation of this regulation may occur if the mortgagee uses the escrow fund to pay off principal or interest accounts. No such contention is raised herein however. Also, an additional difficulty with this argument is raised in footnote 3, *supra*.

section confers jurisdiction over civil actions arising under federal statutes "regulating commerce. . . ." No federal regulation requires First Federal to pay interest.[6] Clearly, plaintiffs' claim for relief under a trust theory is outside the jurisdiction conferred upon the court by Section 1337. Thus, without prejudice to the plaintiffs' right to pursue the trust theory elsewhere, the court denies relief on this theory.

## II

■ The motion as it relates to plaintiffs' second claim is denied. There is a genuine issue of material fact as to this claim.

As noted, First Federal is permitted by a regulation of the Federal Home Loan Bank Board, 12 C.F.R. § 545.6–11, and required by regulation of H.U.D., 24 C.F.R. § 203.23(a), to collect one-twelfth of the estimated annual taxes and insurance premiums per month in order to pay them, as they become due, from the escrow funds.

Plaintiffs' mortgages include the following provision:

"Third: That, in order more fully to protect the security of this mortgage, the Mortgagor . . . in addition to the monthly installments of principal and interest . . ., will pay to the Mortgagee the following sums:

\*      \*      \*      \*      \*      \*

(b) A sum equal to . . . the premiums that will next become due on policies of fire and hazard insurance covering the mortgaged property, plus taxes and assessments, next due on the mortgaged property (all as estimated by the mortgage) less all sums already paid therefor divided by the number of months to elapse before one month prior to the dates when such will become delinquent, such sums to be held by the Mortgagee in trust to pay said (charges)."

Plaintiffs contend that this method of calculating the monthly escrow amount does not comply with the method allowed First Federal under 12 C.F.R. § 545.6–11, or required under 24 C.F.R. § 203.-23(a). These regulations clearly allow First Federal to "estimate" the annual amounts due on insurance and taxes. However, exact estimation is impossible since the amounts owed on these items change from year to year. Thus, the court reads the regulation not to require exact estimation but rather a reasonable estimation based on past experience. Plaintiffs contend that lower monthly escrow amounts would be required if First Federal planned to take advantage of certain installment payment options. It is enough to note now that what constitutes a reasonable estimate is a question of both law and fact. Thus, the question of whether First Federal is in violation of federal regulations also involves questions of fact. Defendant's motion as it relates to plaintiffs' second claim is denied.

An appropriate order may be presented.

---

**6.** Note that the regulations by implication permit or perhaps require mortgagees to earn interest on the escrow funds. Unsupervised institutions are required to deposit the funds into an insured financial institution, 24 C.F.R. § 203.4(c)(2) and § 203.-

7(a)(2). Further, as noted, supervised institutions are not required to segregate. This means that escrow funds may be invested along with other general deposit funds.