(No. 49016.—

ERNEST LA THROP *et al.*, Appellants, v. BELL FEDERAL SAVINGS & LOAN ASSOCIATION, Appellee.

*Opinion filed Oct. 5, 1977.—Rehearing denied Nov. 23, 1977.*

378

DOOLEY, J., WARD, C.J., and GOLDENHERSH, J., dissenting.

Edward Atlas and Harold A. Harris, of Maremont, Lewin & Maremont, of Chicago (Sidney Z. Karasik, of counsel), for appellants.

Schumacher, Jones, Vallely, Kelly & Olson, of Chicago (Henry F. Vallely and James M. Mataya, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

The plaintiffs, Ernest and Mary La Throp, sought to represent a class of mortgagors whose mortgages from the defendant, Bell Federal Savings and Loan, are insured by the Federal Housing Authority (FHA) or the Veterans Administration (VA) and whose contracts, on FHA- or VA-prescribed forms, provide that the mortgagee will hold certain tax and insurance funds "in trust to pay" tax and insurance obligations of the mortgagor. They claim that, under the terms of their mortgage contract, an express

trust for the benefit of the mortgagors was created as to such funds, in violation of which the defendant has commingled the funds with its general funds, has earned large profits from investment thereof, and has never paid the plaintiffs or made an accounting to them for their *pro rata* share of these earnings. Instead, plaintiffs assert, defendant has wrongfully appropriated these earnings for its own use. Plaintiffs ask an accounting for these earnings. Alternatively, the plaintiffs seek imposition of a constructive trust upon the funds, on the theory that defendant unlawfully converted the earnings and was unjustly enriched thereby. The defendant denied that it is a trustee, as claimed by the plaintiffs, admits that it commingles the funds, and asserts by way of affidavit that it has a legal right to treat the funds as its own, and that in so doing it follows the long-standing practice in Illinois and elsewhere with regard to such funds.

Without reaching the question of the propriety of a class action herein, the circuit court of Cook County sustained defendant's "motion for judgment on the pleadings or in the alternative for summary judgment or in the alternative to dismiss." The appellate court affirmed (42 Ill. App. 3d 183), and we here affirm.

It is worth noting that many cases involving similar questions have been presented to the courts of this State and country in the last decade. Because of differences in the specific language of the mortgage contracts and because of the different posture of the cases on the pleadings and on appeal, we deem none of them dispositive of the issues herein. Most of the significant cases have been collected in *Brooks v. Valley National Bank* (1976), 113 Ariz. 169, 171, 548 P.2d 1166, 1168.

The plaintiffs assert that certain FHA regulations and interpretations make erroneous the appellate court's finding that the mortgagee's language, "in trust to pay," did not create an express trust between mortgagor and

mortgagee, and further that the appellate court erred in holding that the plaintiffs' complaint fails to state a cause of action for the imposition of a constructive trust. In this regard, it is urged that the complaint adequately alleges that defendant has been unjustly enriched by the breach of a fiduciary duty it owed plaintiffs, which breach warrants the imposition of a constructive trust upon the advance funds in the hands of the defendant. On cross-appeal the defendant urges that this suit cannot be maintained as a class action, and that the Federal Home Loan Bank Board has primary jurisdiction of the subject matter of plaintiffs' complaint.

To determine if an express trust has been created, a court must look beyond the mere use, or absence of, the word "trust." (*Oglesby v. Springfield Marine Bank* (1946), 395 Ill. 37, 49; Restatement (Second) of Trusts sec. 24(2) (1959).) Critical to the creation of a trust is the expressed intention to create a relationship constituting a trust. (Restatement (Second) of Trusts sec. 23, comment *a* (1959).) The intent of the parties to a contract must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by viewing each part in light of the others. *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283.

Having viewed the mortgage contract as a whole, we deem the following to be the relevant provisions. The plaintiffs promise:

> "That, together with, and in addition to, the monthly payment of principal and interest payable under the terms of the note secured hereby, the Mortgagor will pay to the Mortgagee, on the first day of each month until the said note is fully paid, the following sums:
>
> (a) An amount sufficient to provide the holder hereof with funds to pay the next mortgage insurance premium if this instrument and the note secured hereby are insured, or a monthly charge (in lieu of a mortgage

insurance premium) if they are held by the Secretary of Housing and Urban Development, as follows:

(I) If and so long as said note of even date and this instrument are insured or are reinsured under the provisions of the National Housing Act, an amount sufficient to accumulate in the hands of the holder one (1) month prior to its due date the annual mortgage insurance premium, in order to provide such holder with funds to pay such premium to the Secretary of Housing and Urban Development pursuant to the National Housing Act, as amended, and applicable Regulations thereunder, or

(II) If and so long as said note of even date and this instrument are held by the Secretary of Housing and Urban Development, a monthly charge (in lieu of a mortgage insurance premium) which shall be in the amount equal to one-twelfth (1/12) of one-half (1/2) per centum of the average outstanding balance due on the note computed without taking into account delinquencies or prepayment;

(b) A sum equal to the ground rents, if any, next due, plus the premium that will next become due and payable on policies of fire and other hazard insurance covering the mortgaged property, plus taxes and assessments next due on the mortgaged property (all as estimated by the Mortgagee) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, taxes and assessments will become delinquent, such sums to be held by Mortgagee *in trust to pay* said ground rents, premiums, taxes and special assessments; and

(c) All payments mentioned in the two preceding sub-sections of this paragraph and all payments to be made under the note secured hereby shall be added together and the aggregate amount thereof shall be paid by the Mortgagor each month in a single payment to be applied by the Mortgagee to the following items in the order set forth:

(I) Premium charges under the contract of insurance with the Secretary of Housing and Urban Development, or monthly charge (in lieu of mortgage

insurance premium), as the case may be;

(II) Ground rents, if any, taxes, special assessments, fire and other hazard insurance premiums;

(III) Interest on the note secured hereby; and

(IV) Amortization of the principal of the said note.

Any deficiency in the amount of any such aggregate monthly payment shall, unless made good by the Mortgagor prior to the due date of the next such payment, constitute an event of default under this mortgage. The Mortgagee may collect a 'late charge' not to exceed two cents (2¢) for each dollar ($1) for each payment more than fifteen (15) days in arrears, to cover the extra expense involved in handling delinquent payments." (Emphasis added.)

Paragraphs (a) and (b) above dealt with the advance funds in question here, and paragraph (b) specifically uses the term "trust." However, there is no express provision in the contract indicating that the plaintiffs intended that the defendant should segregate the advance funds from its general account, nor is there any provision requiring defendant to pay plaintiffs earnings on such funds. (Likewise, there is no language manifesting agreement that defendant would pay plaintiffs interest on such funds. This is not determinative, however, as the presence of such language would tend to negate the intention to create a trust and is more in keeping with the creation of a debtor-creditor relationship. Restatement (Second) of Trusts sec. 12, comment g (1959).)

Counterbalancing the use of the word "trust," section (c) requires plaintiffs to make the monthly advance payments stated in paragraphs (a) and (b) in an aggregate sum with the principal and interest due on the note. The second sentence of (c)(IV) makes any deficiency in the payment of the above aggregate sum (absent timely cure) an act of default under the mortgage. The final sentence of that section provides for the assessment of a late charge for failure to make the aggregate payment on time. These

provisions are indicative of the creation of a debtor-creditor relationship with respect to the advance funds, and that relationship is inconsistent with the existence of a trust as to the same funds. (See Restatement (Second) of Trusts sec. 12 (1959). See generally *Kilgore v. State Bank* (1939), 372 Ill. 578, 584-85.) We therefore find that the express terms of the mortgage document are ambiguous as to the intention to create a trust.

When the terms of a contract are plain, the instrument itself is the only source of intent of the parties. (*Decatur Lumber & Manufacturing Co. v. Crail* (1932), 350 Ill. 319, 323-24.) However, where there is an ambiguity arising from the terms of the contract, the meaning may be derived from extrinsic facts surrounding the formation of the contract. 4 Williston, Contracts sec. 629, at 923 (3d ed. 1961).

The plaintiffs assert that extrinsic evidence regarding the contract formation supports a finding of intent to create a trust. Plaintiffs have argued at length that, in essence, the defendant's intent to create a trust was implicit in its use of the word "trust" because of the existence of certain FHA regulations and interpretations, and because, by the terms of defendant's original application to the FHA for acceptance as an insured mortgagee, the defendant agreed to "analyze mortgagors' escrow accounts at least annually." The defendant therein further agreed to comply with the provisions of the FHA regulations and other requirements of the Federal Housing Commissioner. In a slightly different vein, plaintiffs urge that, in the contract with plaintiffs, defendant was bound by the FHA regulations which have the force of law; that these regulations are to be given the interpretation of the agency charged with their administration, and such regulations and interpretations establish that the advance funds were to be segregated funds, in escrow, used only for the designated purposes and held for the benefit of the

plaintiffs.

It is undisputed that Federal regulations may have the force of law with regard to regulated groups, and that the defendant was entitled, by 12 C.F.R. section 545.6—11, to collect the subject advance funds. This same Federal Savings and Loan System Regulation provides that all loan instruments shall comply with applicable provisions of law, government regulations, and the Federal association's charter. FHA regulation (24 C.F.R. sec. 203.23) provides that the terms of the insured mortgage "[s]hall further provide that such [advance] payments shall be held by the mortgagee in a manner satisfactory to the Commissioner for the purpose of paying such ground rents, taxes, assessments, and insurance premiums before the same become delinquent, *for the benefit and account of the mortgagor.*" (Emphasis added.) It is asserted that these regulations bind the mortgagee to the creation of a trust of the advance funds "for the benefit and account of the mortgagor." Laying aside, for the moment, the implicit assertion that Federal regulations can substitute for the intent of the private parties to a contract and bind them to the creation of a trust, we believe that the plaintiffs misinterpret the import of the phrase, "for the benefit and account of the mortgagor." As we interpret it, this phrase does not relate back to the words "shall be *held* by the mortgagee" (emphasis added), but instead relates back to the word "paying." Thus, the mortgagee is to have funds to pay, for the benefit and account of the mortgagor, the taxes, insurance, etc. Our conclusion that this regulation does not dictate imposition of a trust is supported by the addition, in 1975, of 12 C.F.R. section 545.6—11(c), which makes clear that on certain loans made on or after July 16, 1975, a Federal association shall pay interest on the escrow account *if* there is in effect *a specific State statutory provision* for such, and that, "*[e]xcept as provided by contract,* a Federal association shall have no

obligation to pay interest on escrow accounts apart from the duties imposed by this paragraph." (Emphasis added.)

The only other FHA regulations which are asserted to support the intention or legal obligation of the creation, under the mortgage, of a trust for the advance funds is found in 24 C.F.R. section 203.7, which provides in pertinent part:

"(a) Approval of a mortgagee may be withdrawn at any time by notice from the Commissioner, by reason of:
***
(2) The failure of a nonsupervised mortgagee to segregate all escrow funds received from mortgagors on account of ground rents, taxes, assessments and insurance premiums, and to deposit such funds to a special account or accounts with a financial institution whose accounts are insured by the Federal Deposit Insurance Corporation or by the Federal Savings and Loan Insurance Corporation;
(3) The use of escrow funds for any purpose other than that for which they were received."

The plaintiffs assert that the use of the word "escrow" in section (3) indicates that a trust was to be created with respect to the advance funds. Without delving into the differences between an escrow and a trust, we point out that the mere use of the word "escrow" is, of itself, no more determinative of the creation of a trust relation than the use of the word "trust," as indicated above. Additionally, section (2) above, which requires segregation of advance funds, deals only with nonsupervised lenders. It is uncontroverted that, pursuant to FHA regulation (24 C.F.R. section 203.4), the defendant herein is a supervised lender. As such, it is not subject to the terms of section 2. "[T]here is no regulation which requires supervised institutions to segregate escrow funds." (*Gibson v. First Federal Savings & Loan Association* (6th Cir. 1974), 504 F.2d 826, 829.) The district court of Michigan pointed out in *Gibson* that section (3) does not expressly prohibit the

practice of using escrow funds for investment purposes. It observed:

> "Rather, it prohibits application of the funds for purposes different from that for which they were received. Plaintiffs do not dispute that [defendant] pays the taxes and insurance premiums with the escrow funds and that any excess it collects over the amount actually paid out for taxes and insurance is credited for future payments of these items. Thus, the escrow funds are used exclusively for the purpose for which they were received." (Footnote omitted.) *Gibson v. First Federal Savings & Loan Association* (E.D. Mich. 1973), 364 F. Supp. 614, 616.

We deem it significant that 24 C.F.R. section 203.7(a) appears, on its face, to regulate the relationship between mortgagee and FHA, rather than the relationship between mortgagee and mortgagor, for it provides that approval of the mortgagee may be withdrawn for failure to comply with the provisions thereof, but section (b) thereto provides that "[w]ithdrawal of a mortgagee's approval shall not affect the insurance on mortgages accepted for insurance."

The plaintiffs strongly urge that the terms of the regulations above must be construed in light of the FHA's own applicable interpretations. Plaintiffs cite numerous sections of the FHA's interpretive Mortgagee's Guide, published in April of 1970. Insofar as the interpretations therein were published almost a year after the date of the mortgage contract herein, such interpretation can in no way be deemed to have controlled the intent of either party to the contract at the time of its formation. Furthermore, it is undisputed that administrative interpretations (as distinguished from administrative regulations) do not have the force and effect of law. In *Gibson v. First Federal Savings & Loan Association* (6th Cir. 1974), 504

F.2d 826, 830, which refers specifically to the Mortgagee's Guide and certain opinions of departmental counsel, it has been held that "such statements and opinions do not have the force or effect of regulations."

As a supervised lender, the defendant is subject to the control of the Federal Home Loan Bank Board, whose regulations "do *** appear to authorize the complained of practice." (*Kinee v. Abraham Lincoln Federal Savings & Loan Ass'n* (E.D. Pa. 1973), 365 F. Supp. 975, 978.) The court in *Kinee* points out that even if those regulations did not specifically authorize the practice, "the plaintiffs would still be in the position of never having brought to the Court's attention any provision of the Homeowners Loan Act or of the regulations promulgated pursuant thereto which forbid the practice and therefore might arguably create a cause of action for following the practice." (365 F. Supp. 975, 978.) As the Mortgagee's Guide was published after the formation of the contract in question, and as the applicable FHA regulations do not clearly require the creation of a trust, we believe the plaintiffs' reliance upon the FHA regulations and interpretations in the construction of this contract is misplaced.

Furthermore, even if plaintiffs are correct in their contention that the FHA regulations and the Mortgagee's Guide have the purpose of imposing a trust upon the advance funds, we deem it clear that in an action between a mortgagor and mortgagee (not between the mortgagee and FHA), where the mortgage contract does not specifically incorporate the FHA regulations or expressly indicate agreement thereto, such regulations are not determinative of the content of the contract created between the parties. Once again, the intention of the parties thereto is paramount. No intention to so incorporate FHA regulations is discernible from the mortgage document.

An affidavit by William C. Prather, general counsel for the United States Savings and Loan League, states in

support of the defendant's motion that it is, and it has for many years been, common practice in the savings and loan business in Illinois and throughout the United States to commingle the lender's general funds and the mortgage loan payments—including the required advance payments for taxes and insurance—and to distribute no earnings or interest earned on such advance funds to the mortgagors. This custom and usage has been noted elsewhere in a similar case where, in a specially concurring opinion, Vice Chief Justice Struckmeyer observed in *Brooks v. Valley National Bank* (1976), 113 Ariz. 169, 175-77, 548 P.2d 1166, 1172-74:

"The majority have cited to ten lawsuits which have been brought against lending institutions in various courts of this country to compel reimbursement for the use of impound funds, or what is usually described as escrow funds. \*\*\* [These cases] \*\*\* establish a usage, the customary practice by lending institutions in the United States. Without exception, interest was not paid nor were the earnings on the investment of the impound funds credited to the mortgagor.

\* \* \*.

The practice of requiring impound payments has existed since the early 1930's. In every instance, without exception, where a suit has been brought to compel payment of interest or the earnings on the investment of the impound funds, the lending institution has not paid the mortgagor for the use of the impound funds. Nor is there anywhere the slightest suggestion that the Valley National Bank or any lending institution ever paid for the use of impound funds.

While a few isolated instances will not prove a usage, one so firmly established for so many years nationwide should be controlling. A usage

will be binding if it is uniform, long established, and so well known that it can be said that the parties contracted with reference to it and the failure to conform to it would be the exception. *Cleveland etc. R.R. Co. v. Jenkins,* 174 Ill. 398, 51 N.E. 811. Nor is a usage invalid because its effect is different from a general rule of law.

'It is well settled that a trade usage which is contrary to a statute or which contravenes public policy is invalid and may not be invoked; but where a rule of law is of a character that the parties may make it inapplicable to their contract by express agreement, they may likewise render it inapplicable by implied agreement or by usage.' [Citation.] "

(Although Vice Chief Justice Struckmeyer felt the use of the words "in trust" created a trust fund in this case, he concurred in the result of the majority, denying payment for the usage of advance funds on the basis of the above rationale.) We believe that the plaintiff's intention and expectation with regard to the advance-payment provisions of the mortgage must be judged in light of the custom and usage of commingling the funds and of not paying interest or earnings thereupon. We conclude that plaintiffs have failed to make a showing that they intended to create an express trust of those advance funds.

We decline the plaintiffs' invitation to overlook deficiencies in their expressed intention on the basis that the contract herein was a contract of adhesion—a form contract supplied by FHA and the mortgagee—the terms of which could be accepted or rejected, but not negotiated, by the plaintiffs. If there is need for the imposition of an unwritten contract term to impose a trust on these advance funds for the benefit of plaintiffs, we believe it is the proper function of the legislature to so determine. See

*Surrey Strathmore Corp. v. Dollar Savings Bank* (1975), 36 N.Y.2d 173, 178, 325 N.E.2d 527, 530, 366 N.Y.S.2d 107, 110; *Carpenter v. Suffolk Franklin Savings Bank* (1976), —— Mass. ——, ——, 346 N.E.2d 892, 900. See also Ill. Rev. Stat. 1975, ch. 95, par. 101 *et seq.* (effective January 1, 1976).

We likewise reject plaintiffs' assertion that they have stated a claim for unjust enrichment. It has been pointed out that "the absence of a provision to pay interest on the impoundment funds is equivalent to an agreement that it should not be paid. A person is not entitled to compensation on the grounds of unjust enrichment if he receives from the other that which it was agreed between them the other should give in return. Restatement of Restitution sec. 107, comment (1)a. Finally, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." (*Brooks v. Valley National Bank* (1976), 113 Ariz. 169, 174, 548 P.2d 1166, 1171.) The above principles are applicable to the case at bar, and they are not altered by the finding of a mortgagee's fiduciary duty in *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398. In that case, this court held the defendant breached a fiduciary duty owed to its creditor, for whom and with whose funds it purchased title insurance and then retained a rebate thereon from the insurer. The court observed that "[m]ore is involved here, however, than a relationship of mortgagor and mortgagee 'of itself' ***." (57 Ill. 2d 398, 408.) Nothing in the specific relationship of the parties here suggests anything other than the customary mortgagor-mortgagee relationship. Although the breach of a fiduciary relationship may justify the imposition of a constructive trust, plaintiffs have failed to allege facts sufficient to establish the creation of a fiduciary relationship or a breach thereof.

Defendant's cross-appeal claims that the Federal

Home Loan Bank has primary jurisdiction of this cause of action. We have reviewed the cases submitted for this proposition and find the contention to be without merit. In view of our disposition of the above issues, we do not reach the class action issue asserted by the defendant on cross-appeal.

For the above reasons, the judgments of the appellate and circuit courts are affirmed.

*Judgments affirmed.*

MR. JUSTICE DOOLEY, dissenting:

The majority commits the basic error of treating this appeal as if there had been a determination on the merits. While it describes defendant's motion as a "motion for judgment on the pleadings or in the alternative for summary judgment or in the alternative to dismiss" (68 Ill. 2d at 380), the order indicates that there was a judgment of dismissal.

A motion for judgment on the pleadings admits the truth of well-pleaded facts by the opposite party. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 553; *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 448; *Milanko v. Jensen* (1949), 404 Ill. 261, 265.) So also on a motion to dismiss we must consider as true all well-pleaded facts. (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305.) Since the record is without evidence of summary judgment, and in view of the order entered, we must view this case as decided on a motion to dismiss.

The query then becomes, What facts do the plaintiffs seek to prove? Plaintiffs, as the majority indicates, own homes which are mortgaged to defendant on Federal Housing Authority (FHA) or Veterans Administration (VA) forms. The mortgages require mortgagors to make payments one month prior to the date when ground rents, insurance premiums, taxes and assessments will become

delinquent, "such sums to be held by Mortgagee *in trust* to pay said ground rents, premiums, taxes and special assessments." (Emphasis added.)

The FHA regulations concerning this obligation provide that "such [advance] payments shall be *held* by the mortgagee *** for the purpose of paying such ground rents, taxes, assessments, and insurance premiums *** *for the benefit and account of the mortgagor.*" (Emphasis added.) (24 C.F.R. sec. 203.23 (1977).) Plaintiffs allege that the language in the agreement establishes an express trust, and that the FHA regulations and other requirements binding defendant contemplate a trust relationship in providing that supervised lenders must use such funds only for the purpose for which they were collected, namely, to pay bills for taxes, special assessments, ground rents and hazard insurance premiums.

Defendant, it is alleged, had a fiduciary duty to plaintiffs. Instead of accounting to plaintiffs for all earnings and proceeds made by the use of the funds deposited in trust, it has made profits through the investment of such funds in the operation of its business. In the alternative, plaintiffs contend that the defendant fraudulently converted the earnings from these monies to its own use, commingled these funds with its general funds and was unjustly enriched as a result. Plaintiffs seek the declaration of a constructive trust as an alternative remedy.

The issue before us is rather simple: Does the complaint allege facts sufficient to state a cause of action for breach of an express trust or for the declaration of a constructive trust?

The complaint alleges that an express trust was created. The existence of such an express trust turns upon the nature of the specific agreement and all the facts before the court. See *Carpenter v. Suffolk Franklin Savings Bank* (1973), 362 Mass. 770, 779-80, 291 N.E.2d

609, 615-16; *Buchanan v. Brentwood Federal Savings & Loan Assoc.* (1974), 457 Pa. 135, 143-45, 320 A.2d 117, 122-23; Restatement (Second) of Trusts sec. 12, comment *g,* sec. 24 (1959).

The Restatement (Second) of Trusts sec. 12, comment *g* (1959), cited by the majority, states that the existence of a trust can be determined from the intention of the parties as ascertained by a consideration of their words and conduct in light of all the circumstances. But how can such intent be determined without learning the facts? This is the limbo in which we find ourselves when there has been a summary disposition on a motion to dismiss.

Plaintiffs' allegations indicate the presence of a trust. While the words "in trust" are not necessary to the creation of such a trust, yet they are employed here. (See *Carpenter v. Suffolk Franklin Savings Bank* (1973), 362 Mass. 770, 776, 291 N.E.2d 609, 614; *Buchanan v. Brentwood Federal Savings & Loan Assoc.* (1974), 457 Pa. 135, 143, 320 A.2d 117, 122; Restatement (Second) of Trusts sec. 24(2) and sec. 24, comment *b* (1959).) They must be given their common meaning. We cannot ignore clear contractual language. *Brooks v. Valley National Bank* (1976), 113 Ariz. 169, 175-76, 548 P.2d 1166, 1172-73 (Vice Chief Justice Struckmeyer, specially concurring).

It would seem that the payments were designated by both mortgagor and mortgagee for a specific purpose—the payment of ground rents, taxes, assessments and insurance premiums. Where a mortgagor makes payments to a mortgagee with the express purpose that the funds shall be used for a particular purpose, then such funds may be considered held by the mortgagee in trust. 1 A. Scott, Trusts sec. 24, at 192 (3d ed. 1967), observed: "Where the owner of property transfers it to another with a direction to transfer it to *** a third person, this may be a sufficient manifestation of an intention to create a trust."

In *Andrew v. Union Savings Bank & Trust Co.* (1935),

220 Iowa 712, 715, 263 N.W. 495, 497, where a bank agreed to hold certain sums pending the outcome of an attachment suit, it was observed: "[T] he money does not become the property of the bank. The fund is merely intrusted to the bank as a trustee or bailee without any authority on the part of the bank to use it as its own."

In the oft-quoted *In re Interborough Consol. Corp.* (2d Cir. 1923), 288 F. 334, 347, the court observed: "There are certain principles we regard as established: \*\*\* Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity as a trustee, for a breach of trust." It is well established that the transfer of funds to a bank with the express purpose that they be used for a specified purpose lends support for the existence of a trust. *Carpenter v. Suffolk Franklin Savings Bank* (1973), 362 Mass. 770, 777, 291 N.E.2d 609, 614; *Buchanan v. Brentwood Federal Savings & Loan Assoc.* (1974), 457 Pa. 135, 147-48, 320 A.2d 117, 124; 1 A. Scott, Trusts sec. 24, at 192 (3d ed. 1967); see Comment, *Payment of Interest on Mortgage Escrow Accounts: Judicial and Legislative Developments,* 23 Syracuse L. Rev. 845, 852 (1972).

Despite the strained interpretation given the language by the majority (slip op. at 5), FHA regulation (24 C.F.R. sec. 203.23 (1977)) provides the advance payments in question are to be held by the mortgagee for the purpose of paying certain obligations for the benefit of the mortgagor. All this leads to the conclusion that the complaint stated a cause of action for an express trust.

In this posture of the case there are present the essentials of a trust, namely, a fund, title in the trustee, a trustee and a well-defined beneficiary, as Mr. Justice Wachtler graphically points out in his opinion in *Surrey Strathmore Corp. v. Dollar Savings Bank* (1975), 36

N.Y.2d 173, 179-80, 325 N.E.2d 527, 531 (Wachtler, J., dissenting).

That the bank may not have subjectively intended to create a trust relationship, as evidenced by the common practice to distribute no earnings or interest on such advance funds, is not conclusive of the issue. In the law of trusts, as in the law of contracts in general, it is the external manifestation of intent which is—controlling. (Restatement (Second) of Trusts sec. 2, comment *g*, sec. 23, comment *a* (1959).) A trier of fact might reasonably conclude that the mortgage agreement and whatever other facts are adduced in a hearing on the merits indicate the presence of a trust relationship. The mortgagors who signed the form mortgage contracts presumably read the agreement.

The FHA insures mortgages on homes. There is a dollar limitation on the amount of any particular home mortgage which may be guaranteed by it. At present that limit is $45,000 for owner-occupied, single-family residences. (12 U.S.C. sec. 1709(b)(2) (Supp. 1975); 24 C.F.R. 203.18 (1977).) Thus, persons who obtain FHA mortgages are purchasers of nonexpensive homes or are of limited means. Savings and loan associations are designed to promote home ownership. (Ill. Rev. Stat. 1975, ch. 32, par. 702(a); 12 U.S.C. sec. 1464(a) (1970).) It is a recognized fact that banks are not interested in investing in long-term mortgages. Hence, the only avenue to borrowers without particular stature at banks has been the savings and loan association, today a vital force in the supply of credit. This, of course, adds up to inequality of bargaining power, a circumstance we cannot disregard. The mortgagors in these FHA loans had no place to go but to the savings and loan lenders. They had to accept the mortgage on the savings and loan association's terms.

The majority noted that plaintiffs have not made a showing that they intended to create an express trust (68

Ill. 2d 390). But there has been no opportunity to do so, and the majority would foreclose such an occasion. Further analysis is idle. The complaint stated sufficient allegations to put in issue the creation of a trust and consequent imposition of fiduciary duties. *Carpenter v. Suffolk Franklin Savings Bank* (1973), 362 Mass. 770, 291 N.E.2d 609; *Buchanan v. Brentwood Federal Savings & Loan Assoc.* (1974), 457 Pa. 135, 320 A.2d 117; Note, *Lender Accountability and the Problem of Noninterest-bearing Mortgage Escrow Accounts,* 54 Boston U.L. Rev. 516, 524 (1974).

Plaintiff's alternate contention is that the profits defendant earned through use of their funds should be impressed with a constructive trust for their benefit.

A constructive trust can arise where there is either actual fraud or implied fraud resulting from the breach of a confidential relationship. (*Hofert v. Latorri* (1961), 22 Ill. 2d 126, 130; *Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 493-94.) This court has recognized that the mortgagor-mortgagee relationship can be fiduciary in character. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398.) Where the loan agreement provides for a specific disposition of a sum of money, a fiduciary relationship may arise. Where the mortgagee uses the money for a purpose other than that authorized and for its own gain, the mortgagee breaches its fiduciary duty. In holding that the complaint stated a cause of action, the *Janes* court quoted from the Restatement of Restitution, section 197 (1937):

> "Where a fiduciary in violation of his duty to the beneficiary receives or retains a bonus or a commission or other profit, he holds what he receives upon a constructive trust for the beneficiary."

Plaintiffs are entitled to prove their claim for the declaration of a constructive trust based on the breach of the fiduciary relationship created by the mortgage agree-

ment. More is involved here than a relationship between a mortgagor and a mortgagee. There is also an agreement to hold money in trust for the purpose of paying obligations of the mortgagor. Should the trial result in a finding that there is no express trust, there could be found a constructive trust based on the mortgage agreement.

There is no inconsistency between these two theories. (See *Buchanan v. Brentwood Federal Savings & Loan Assoc.* (1974), 457 Pa. 135, 320 A.2d 117.) The plaintiffs are not seeking both to enforce a contractual provision concerning interest and to receive restitution for unjust enrichment. They are seeking alternative relief. If there is no binding express trust, then, the complaint alleges, in the alternative, there is a constructive trust. The language quoted by the majority from *Brooks v. Valley National Bank* (1976), 113 Ariz. 169, 174, 548 P.2d 1166, 1171, is not germane.

A constructive trust is raised by equity to require a party to disgorge retained funds on the ground that their retention is wrongful and unjustly enriches the holder. (Restatement of Restitution sec. 160 (1937); Restatement (Second) Trusts sec. 1, comment *e* (1959); See Comment, *Payment of Interest on Mortgage Escrow Accounts: Judicial and Legislative Developments,* 23 Syracuse L. Rev. 845, 852 n.43 (1972).) As the Pennsylvania Supreme Court noted, in deciding a similar case:

> "It is rare that the existence or absence of justification for imposing an equitable remedy, especially a constructive trust, can be decided as a matter of law. Only after all the facts are before a court, can it in most cases properly determine the issue. ***
>
> * * *
>
> *** The evil to be avoided is unfairness and inequality in bargaining or dealings between parties." *Buchanan v. Brentwood Federal Savings*

*& Loan Assoc.* (1974), 457 Pa. 135, 152-53, 320 A.2d 117, 127.

Whether there is an express trust or constructive trust cannot be determined by a court on a motion to dismiss. Whether the plaintiffs will be successful on a trial we do not know, but simple justice dictates that under the facts and circumstances here they be given a hearing. Nor do we stand alone. Such reputable jurisdictions as Pennsylvania (*Buchanan v. Brentwood Federal Savings & Loan Assoc.* (1974), 457 Pa. 135, 320 A.2d 117) and Massachusetts (*Carpenter v. Suffolk Franklin Savings Bank* (1973), 362 Mass. 770, 291 N.E.2d 609) have both decided that under similar circumstances it was error to preclude a trial. It is worthy of note that these authorities are not alluded to in the majority opinion.

I would reverse the judgment of the appellate court and afford plaintiffs the opportunity to prove their case. Only then will the intangibles of these issues become realities. In my opinion, summary dispositions can be destructive of substantial rights in certain instances. This is one of them.

WARD, C.J., and GOLDENHERSH, J., join in this dissent.