CEO MARKETING PROMOTIONS COMPANY, and IBR Corporation, Harbortown Division, Plaintiffs,

v.

HEARTLAND PROMOTIONS, INC., Harris Bank Card, Security Pacific Bank, and Patrick Mueller, both individually and as President of Heartland Promotions, Inc. and Steven Dean, both individually and as Vice President of Heartland Promotions, Inc., Defendants.

No. 89 C 7284.

United States District Court, N.D. Illinois, E.D.

Feb. 13, 1990.

Norman P. Jeddeloh, Siegan, Barbakoff & Gomberg, Chicago, Ill., for plaintiffs.

Edward L. Foote, Peter C. McCabe, III, Winston & Strawn, Chicago, Ill., for Heartland Promotions, Inc., Patrick Mueller and Steven Dean.

James F. Gebhart, Chapman & Cutler, Chicago, Ill., for Harris Bank Card.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

This case arises out of an oral business relationship between a marketer of consumer products through syndicators of direct mail advertisers, CEO Marketing Promotions Company ("CEO"), and a syndicator, Heartland Promotions, Inc. ("Heartland"), that specialized in direct mail advertising through Bankcard companies.

## FACTS

CEO had an exclusive license to market a line of stove drip pans manufactured by IBR Corporation, Harbortown Division ("IBR"), which was marketed under the registered trademark "Starcon". In May of 1988, CEO entered into an oral agreement with Heartland under which the latter would sell Starcon products by direct mail solicitation through various Bankcard issuers. In accord with this agreement, CEO granted Heartland an exclusive sub-license to market Starcon and supplied it with advertising material CEO had developed but not copyrighted. In turn, Heartland agreed that it would market Starcon drip pans exclusively.

On June 1, 1989, Heartland canceled a large order for Starcon products and has since that date placed no new orders for Starcon. Instead, Heartland filled orders it received for Starcon products with an inferior foreign product. Heartland also continued to use CEO advertising materials in its marketing of the ersatz drip pans but deleted the claim that the product was "made in U.S.A." [1]

Based on the foregoing, CEO and IBR have filed a seven-count complaint against Heartland, its President, its Vice President, and two Bankcard issuers claiming trademark infringement (Count I), unfair competition (Count II), misappropriation and unjust enrichment (Count III), false advertising (Count IV), violation of the Illinois Consumer Fraud and Deceptive Practices Act (Count V), common law fraud (Count VI), and breach of contract (Count VII).

At the same time that CEO filed this complaint it sent a copy, together with an enclosure letter signed by its chief counsel, to each of the Bankcard customers with which Heartland did business informing them of the filing of the suit.[2]

As a result of these communications, Heartland has filed a two-count counterclaim against CEO and IBR alleging intentional interference with prospective busi-

---

1. The foregoing description was taken from the First Amended Complaint.

2. This allegation was taken from the counterclaim filed by Heartland.

ness relations (Count I) and trade libel (Count II).

Heartland has now moved to dismiss Counts III and VI of the first amended complaint and CEO has moved to dismiss the counterclaim.

## DISCUSSION

### HEARTLAND'S MOTION

Although it was not altogether clear in the pleadings, CEO has clarified its misappropriation claim in Count III as based on Heartland's unlawful use of CEO's advertising materials in marketing its inferior foreign product. In its motion to dismiss, Heartland contends that Section 301(a) of the Federal Copyright Act ("copyright law"), 17 U.S.C. § 301(a), preempts state law claims such as CEO's misappropriation tort claim. *See Baltimore Orioles v. Major League Baseball Players Assn.*, 805 F.2d 663, 674 (7th Cir.1986), *cert. denied*, 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987).

In *Baltimore Orioles*, the Seventh Circuit held that Section 301(a) preempts a common law tort claim when two conditions are met. "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in [17 U.S.C. § 102]. Second, the right must be equivalent to any of the rights specified in [17 U.S.C. § 106]." 805 F.2d at 674.

Heartland argues that since the materials it allegedly misappropriated were clearly tangible within the meaning of Section 102 and were "infringed by the mere act of ... distribution", thus violating one of the rights "equivalent" to one protected by Section 106 of the copyright law, CEO's misappropriation claim is preempted.

■ The intention of Congress appears to be "to preempt and abolish any rights under the common law or statutes of a

state that are equivalent to copyright". H. Report N. 94–1476, reprinted at 17 U.S.C.A. § 301. Although Congress apparently did not intend completely to preempt the common law tort of misappropriation, Section 301 appears to preempt the claim as alleged in Count III. *Nash v. CBS, Inc.*, 704 F.Supp. 823, 834–835 (N.D.Ill.1989). CEO's explanation for its employment of the misappropriation tort is to protect against Heartland's "misuse of the Advertising Materials." CEO's Reply, p. 3. The alleged misuse was distribution of these advertising materials to Bankcard customers for enclosure to their cardholders. This is clearly equivalent to seeking copyright protection.[3] Therefore CEO's misappropriation claim contained in Count III is dismissed.

■ Count III also seeks damages for unjust enrichment. Heartland moves to dismiss this aspect of Count III on the ground that it is fatally inconsistent to the allegation, common to all counts including Count III, that CEO and Heartland entered into an oral sub-licensing agreement. First Amended Complaint, ¶¶ 12–13. *See First Commodity Traders v. Heinold Commodities*, 766 F.2d 1007, 1011 (7th Cir.1985); *La Throp v. Bell Federal Savings & Loan*, 68 Ill.2d 375, 391, 12 Ill.Dec. 565, 572, 370 N.E.2d 188, 195 (1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978).

■ CEO contends that all it is doing is pleading in the alternative, which it is allowed to do under Rule 8(e)(2), Fed.R.Civ.P. It is true a plaintiff may plead inconsistent theories in its complaint as alternatives. *Crum v. Krol*, 99 Ill.App.3d 651, 54 Ill.Dec. 864, 425 N.E.2d 1081 (1981). However plaintiffs have not pled alternative theories. Count III clearly incorporates the allegation that the parties entered into an oral sub-licensing agreement. *See* First

---

**3.** To the extent that this claim may be based on the unfair competitive aspect of Heartland using the advertising material of CEO to market a product in direct competition with Starcon, the claim would be subsumed into CEO's unfair competition claim contained in Count II. *See* First Amended Complaint, ¶ 34. Neither CEO nor Heartland are in the business of selling advertising materials as such; rather they both sell drip pans. "The law of misappropriation has been limited to cases where intellectual property, lawfully obtained, is used in direct competition with the person who created it." *Board of Trade of the City of Chicago v. Dow Jones*, 98 Ill.2d 109, 74 Ill.Dec. 582, 589, 456 N.E.2d 84, 91 (1983) (Simon, J., dissenting).

Amended Complaint, ¶¶ 12–13. Thus Count III contains an internal inconsistency and is subject to dismissal. *See First Commodities*, 766 F.2d at 1012, and *La Throp*, 12 Ill.Dec. at 572, 370 N.E.2d at 195.

■ The last part of Heartland's motion seeks to dismiss Count VI which sounds in common law fraud. The reason urged is that this count violates Rule 9(b) by failing to plead fraud with specificity. Fed.R. Civ.P. 9(b). Specifically, Heartland argues that the count does not allege who specifically made what fraudulent statement to whom and how and when.

CEO responds claiming that allegations are made within the four corners of the complaint that supply answers to all of these questions. However a fair reading of the complaint indicates that the parties entered into an oral agreement which continued for about one year before Heartland breached it. There are no allegations indicating when Heartland first started marketing the foreign substitutes. A fair implication is that this breach occurred after Heartland quit buying Starcon products in June of 1989. If this is so, it would appear to indicate a change of heart rather than a preconceived fraudulent plan of Heartland to get free advertising material. No person is implicated in making the alleged fraudulent representations. Accordingly, Count VI fails to comply with the requirement of Rule 9(b) and is dismissed.

## CEO'S MOTION

CEO's motion to dismiss the counterclaim is based on its contention that the use of a complaint in the manner alleged in the counterclaim is absolutely privileged under Illinois law. However CEO also agrees with Heartland that an attorney may only publish defamatory material as a part of a judicial proceeding if it has some relation to the proceeding. Both cite the Restatement (Second) of Torts, § 586 (1977), as well as, among others, the Illinois case of *Weiler v. Stern*, 67 Ill.App.3d 179, 23 Ill.Dec. 855, 384 N.E.2d 762 (1978), for this proposition. Where the parties disagree is whether the activities of CEO's chief counsel in mailing copies of the complaint to Heartland's customers had "some relation to the proceeding."

CEO contends that it was merely giving notice to potential trademark infringers of Heartland's alleged infringement as provided by Section 32 of the Trademark Act, 15 U.S.C. § 1114. Heartland argues in response that this so-called "reason" does not appear of record in this case and nowhere in the letter to its customers is there any request by CEO that the recipient take any action, it does not warn the recipient that it may be participating in a fraud or an infringement as described in the complaint, nor does it even request the recipient to refrain from doing anything in the future.

■ The problem with CEO's position, at this stage of the proceeding, is that its professed reason for sending the complaint to the customers of Heartland is not readily apparent in the record. The counterclaim contends that CEO sent the complaint to Heartland's customers intending Heartland to lose the business of these customers. There is nothing in the pleadings to show that CEO limited its communications to the customers of Heartland who were sending out the infringing flyer to their cardholders. The allegations of the counterclaim are broad enough to include customers of Heartland who had nothing to do with distributing advertising materials for the Starcon products. It could well be that a communication to warn an alleged infringer who is innocently engaging in the infringing activity would be a privileged communication. Since the only remedy a trademark holder can obtain against an innocent infringer is an injunction (*see* 15 U.S.C. § 1114), it would be well worth his while to obtain voluntary compliance with his trademark rights rather than have to bring the innocent infringer into the case as additional party defendant. Such a communication could easily be considered "pertinent and material to the matter in controversy," that is, whether an alleged trademark infringement should be redressed. *Weiler*, 23 Ill.Dec. at 856, 384 N.E.2d at 763. *See also Libco v. Adams*, 100 Ill. App.3d 314, 55 Ill.Dec. 805, 806–807, 426

N.E.2d 1130, 1131–32 (1st Dist.1981). If so, it would be absolutely privileged. However, at this point in the proceedings, the court cannot make this assumption. Accordingly, the motion to dismiss the counterclaim is denied.

### CONCLUSION

The motions of the defendants to dismiss Counts III and VI of the first amended complaint are granted. The motion to dismiss the counterclaim is denied.

IT IS SO ORDERED.