**John M. DIXON, Plaintiff-Appellant,**

v.

**Edward A. WHITE and Joan White, Defendants-Appellees.**

**No. 14210.**

United States Court of Appeals
Seventh Circuit.

Jan. 28, 1964.

Charles F. Hough, John W. Hough, of Hough, Young & Coale, Chicago, Ill., J. Robert Hare, Fort Wayne, Ind., Ralph R. Blume, Fort Wayne, Ind., of counsel, for plaintiff-appellant.

William F. McNagny, of Barrett, Barrett & McNagny, Fort Wayne, Ind., for defendants-appellees.

Before DUFFY, KNOCH and CASTLE, Circuit Judges.

DUFFY, Circuit Judge.

In this suit, plaintiff sought a judicial declaration that a trust exists for the benefit of plaintiff with one or both of the defendants as trustee. In substance, the complaint alleges that during 1952, plaintiff entrusted $1500 to defendants, and that there was an oral agreement whereby plaintiff would cancel the obligation to repay in consideration of the promise of defendants to cause beneficial ownership of stock in Bowmar Instrument Corporation (Bowmar) to be vested in plaintiff, but that defendants would remain the record owners, holding said shares in trust for the benefit of plaintiff.

Plaintiff alleges the success of Bowmar and various accretions to the stock due to stock dividends and so-called stock-splits, have caused the 30 shares of stock to which he would have been at first entitled, to have amounted to 36,000 shares at the time the suit was commenced, and that such shares were worth $26 per share. Plaintiff seeks to impress a trust upon 36,000 shares of Bowmar stock and

asks the Court to determine that defendants hold as record owners in trust for the plaintiff, said 36,000 shares, or, in the alternative, the plaintiff have a money judgment against the defendants.

Defendants have admitted at all times in this litigation that the relationship of debtor and creditor existed between them and plaintiff, and that they are indebted to the plaintiff in the sum of $1500, and that tender of such a sum to the plaintiff has been made by them, but refused.

Defendant Joan White is the daughter of plaintiff John M. Dixon. Defendant Edward A. White is the husband of Joan and son-in-law of plaintiff. This family relationship has complicated the situation which was presented to the trial court.

We think the relationship was well explained in the finding of fact where the trial court stated: "In the instant case, there is no question but that the plaintiff was a devoted and loving father who enjoyed the affection and interest of a dedicated daughter. However, this flow of family affection was marred by what might be termed a 'personality conflict' between the plaintiff and his son-in-law, Edward A. White. The plaintiff, notwithstanding his admirable fatherly qualities, was an intense man given to emotional outbursts and fits of temper which were further amplified by his great pride and unyielding opinions. Perhaps of equal significance was the resentment of the defendant Edward A. White of the advice and assistance which was offered to him by the plaintiff after Bowmar had enjoyed the first fruits of success. * * * "

In 1952, plaintiff John M. Dixon, lived in California and was a semi-retired but vigorous business man, fifty-nine years of age, who had more than thirty years' experience in the buying and selling of securities. In 1952, defendant Edward A. White, twenty-four years of age, was a young graduate engineer. At that time, Joan White, his wife, was twenty-five years of age and they lived in a small apartment in Fort Wayne, Indiana.

In 1951, Edward A. White was employed by Farnsworth-Capehart Radio and Television Company at Fort Wayne. During 1951, White conceived the idea of organizing a corporation for the production of electronic, mechanical and electrical appliances.

In the period immediately following the incorporation of Bowmar, defendant Edward A. White worked without a cash salary, and Joan worked for a Fort Wayne newspaper to earn enough for bare living expenses. Joan also did some clerical work at Bowmar and at times operated punch presses and lathes. Defendants personally borrowed funds on their furniture and automobile in order to help them discharge their personal obligations and to lend some assistance to Bowmar.

In February 1952, defendant Edward A. White wrote a letter to plaintiff requesting a loan to co-defendants of $1,000 stating that defendants were in dire need of financial assistance. The trial court found the letter did not make a request for money upon behalf of Bowmar nor did the letter contain any reference to Bowmar stock. This letter was not produced at the trial of this cause. The trial court found that the letter had been in plaintiff's possession as late as 1960. Plaintiff claimed that he had lost or mislaid the letter.

Promptly after receiving the request for $1,000, plaintiff wrote a check for $1,000 payable to the order of E. A. White, dated February 22, 1952. The check was received by the co-defendants in Fort Wayne, was endorsed by defendant "E. A. White" and was placed in the personal joint bank account of the defendants.

Co-defendants thereafter issued twenty-three personal checks on their joint bank account in payment for personal living expenses, and some weeks thereafter, paid $400 to Bowmar as a capital contribution.

Shortly after defendants received the $1,000 check, defendant Joan White called the plaintiff and talked with him by long distance telephone. She expressed her deep appreciation for the loan and also expressed a concern regarding the

indebtedness and the repayment of same. She advised plaintiff that the defendants were short of cash but might consider a partial repayment of the debt in stock of Bowmar, but that such stock would not be of much help to the plaintiff since no dividends were anticipated and the business was in a very hazardous position. She said she would discuss some plan of repayment with her husband and with some other people. During this conversation, plaintiff stated he was glad to be able to help, and for Joan White not to worry about repayment at this time.

On March 5, 1952, the defendants wrote to the plaintiff. The letter was signed by Edward A. White with a longhand notation by Joan White. In pertinent part the letter stated: "Regarding the money which you sent to us, we haven't as yet had a directors meeting to discuss additional stock authorization. We thought at first that the best arrangement would be to take half of it as a personal loan and put the other half in stock for you. It might be more expedient, however, for us to take the $500 worth of stock in our name and keep it for you. We'll see what we can work at the next meeting. At any rate, we are very very happy that you could help us out at this time and we plan on eating again as soon as possible."

In late November 1951 and during part of 1952, plaintiff served Bowmar as its Pacific coast representative and developed several accounts which subsequently proved to be of substantial value to Bowmar. For such services he received not in excess of $88, but he never claimed more than that sum from Bowmar.

A meeting of the Board of Directors of Bowmar was held on March 31, 1952. Although the topic of stock authorization was discussed, there was no authorization or any affirmative action taken regarding the issue of any stock to plaintiff.

The testimony disclosed that the Board of Directors of Bowmar had an oral understanding among themselves that no stock would be offered to any individuals outside of the small initial shareholder group, and that any shareholders wishing to sell would first offer the stock to the other shareholders. There was also some evidence that the desire to keep Bowmar a "closed" corporation was based on the idea that if stock were sold to outsiders, it might be necessary to qualify the stock under state or federal laws.

Promptly following the March 31 meeting of the Board of Directors, Joan White called plaintiff long distance and advised plaintiff that the Whites were not "clear" to hold any stock for plaintiff, and that they would have to repay plaintiff in cash. The trial court found that plaintiff said to his daughter Joan, "Any way you say is all right."

In early July 1952, Joan White wrote to plaintiff requesting a further personal loan of $500. The letter did not state the loan was for or on behalf of Bowmar, nor did the letter contain any reference to stock in Bowmar. On July 7, 1952, plaintiff made out a check for $500 to the order to Mrs. E. A. White and this was mailed to defendants together with a longhand letter. The check was endorsed by Mrs. White and deposited in the personal joint bank account of the defendants.

The trial court found that on numerous occasions after July 7, 1952, plaintiff assured his daughter Joan that he had intended the $500 as a gift, that Joan told her father she would not accept the $500 as a gift, and that she and her husband regarded it as a further loan and that they considered themselves indebted to plaintiff for $1500.

On February 12, 1959, defendants sent to plaintiff a $1000 Bowmar bond as a gift and as an expression of gratitude for the kindness of plaintiff. It is clear defendants did not intend this bond to constitute a payment of their indebtedness to plaintiff. Defendants found it necessary to borrow funds in order to purchase this bond.

From February 19, 1952 to sometime in 1959, when the parties to this suit

had a serious quarrel, plaintiff made no claim or demand on either or both of defendants for stock in Bowmar, allegedly held for his benefit or for his account.

In November 1959, at a time when the quarrel was intense, plaintiff and defendants had a conversation in Fort Wayne at the office of Edward White. Many family matters and disputes of the past were aired. During most of this conversation a recording device was used to record the conversation. This fact was known to both the plaintiff and the defendants. Near the end of the conversation, defendants made an effort to arrive at some arrangement to satisfy plaintiff, but no agreement was reached.

 The findings of fact herein are clearly sustained by substantial evidence. As to the pertinent law, the burden of proof was on the plaintiff to establish the alleged express trust by clear and unequivocal evidence, which plaintiff has failed to do. The evidence was wholly insufficient to sustain plaintiff's theory. Mayfield v. Kansas City Life Insurance Company, 7 Cir., 158 F.2d 331, 334; Shapiro v. Rubens, 7 Cir., 166 F.2d 659, 666. It is also clear that the evidence does not sustain plaintiff's alternative claim that an implied trust existed.

We approve of the statement of the trial court which it made immediately preceding the numbered findings of fact, that " * * * [N]o relationship was ever intended by any of the parties which created anything more than a debtor-creditor relationship, and that the motivating force of the plaintiff in advancing the sums totaling $1,500 to his daughter and her husband was the unselfish dedication of a father for his daughter's welfare and in his pride in their efforts to achieve success."

Plaintiff also claims that the trial court erred because no proper foundation was laid for the admission of the sound-recording discs. We find no error.

Likewise without merit is plaintiff's claim that the deposition of Sarah Jane Harris was apparently never submitted to nor considered by the trial judge.

Plaintiff also assigned error because of the Court's denial of his motion for a new trial, motion for amendments and additions to the findings of fact and conclusions of law, and motion to amend judgment. We think the trial court correctly denied these motions.

The trial court concluded that because defendants had never served on plaintiff an offer to allow judgment against them for $1,500 pursuant to Rule 68, Federal Rules of Civil Procedure, plaintiff should recover from defendants the sum of Fifteen Hundred ($1,500) Dollars. The costs in the District Court were assessed against the defendants.

The judgment of the District Court is Affirmed.