**Forrest Stanley JUDD and Iva Jean Judd, Individually and on Behalf of All Members of a Class of Borrowers Similarly Situated, Plaintiffs-Appellants,**

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF INDIANAPOLIS, Union Federal Savings and Loan Association, Merchants National Bank and Trust Company, American Fletcher National Bank and Trust Company, The Indiana National Bank, and Meridian Mortgage Company, Defendants-Appellees.**

No. 82–2143.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1983.
Decided June 23, 1983.

Laurence S. Berman, Levin & Fishbein, Philadelphia, Pa., for plaintiffs-appellants.

James E. Rocap, Jr., Indianapolis, Ind., for defendants-appellees.

Before PELL and BAUER, Circuit Judges, and GRAY, Senior District Judge.*

BAUER, Circuit Judge.

After a one-day bench trial, the district court ruled for Defendant Meridian Mortgage Company, finding that the mortgages at issue did not create trusts for the benefit of the mortgagors. We affirm.

I

Forrest and Iva Judd filed a class action complaint in 1976, alleging that several defendant banks and savings and loan institutions conspired to force mortgagors to pay in advance certain taxes, insurance premiums, and rents without compensating the mortgagors for the institutions' use of the money. Although the action was initiated under several Indiana and federal statutes, all counts of the complaint were dismissed before trial except a single common law claim against a single defendant, Meridian

---

* The Honorable William P. Gray, Senior Judge of the United States District Court for the Central District of California, is sitting by designation.

Mortgage. In that remaining count, the plaintiffs claim that terms of the mortgage contracts executed by class members with Meridian Mortgage create express trusts for the benefit of the mortgagors. They allege that the defendant violated the trusts by using the plaintiffs' advances to its own advantage without accounting to the plaintiffs for profits earned on the money.

The relevant sections of the Veterans Administration-approved mortgage signed by the named plaintiffs and representative of all the mortgages are:

3. [The Mortgagor] will pay to the Mortgagee, as trustee, (under the terms of this trust as hereinafter stated) together with, and in addition to, the monthly payments under the term of the note secured hereby, on the first day of each month until the said note is fully paid:

(a) A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the mortgaged property (all as estimated by the Mortgagee, and of which the Mortgagor is notified) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, taxes and assessments will become delinquent, such sums to be held by Mortgagee in trust to pay said ground rents, premiums, taxes, and special assessments.

(b) The aggregate of the amounts payable pursuant to subparagraph (a) and those payable on the note secured hereby, shall be paid in a single payment each month, to be applied to the following items in the order stated:

(I) ground rents, taxes, special assessments, fire and other hazard insurance premiums;

(II) interest on the note secured hereby; and

(III) amortization of the principal of said note.

Any deficiency in the amount of such aggregate monthly payment shall, unless made good by the Mortgagor prior to the due date of the next such payment, constitute an event of default under this mortgage. At Mortgagee's option, Mortgagor will pay a "late charge" not exceeding four per centum (4%) of any installment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured thereby.

4. If the total of the payments made by the Mortgagor under (a) of paragraph 3 preceding shall exceed the amount of payments actually made by the Mortgagee as trustee for ground rents, taxes or assessments or insurance premiums, as the case may be, such excess shall be credited on subsequent payments to be made by the Mortgagor for such items or, at Mortgagee's option, as trustee, shall be refunded to Mortgagor. If, however, such monthly payments shall not be sufficient to pay such items when the same shall become due and payable, then the Mortgagor shall pay to the Mortgagee as trustee any amount necessary to make up the deficiency. Such payments shall be made within thirty (30) days after written notice from the Mortgagee stating the amount of the deficiency, which notice may be given by mail. If at any time the Mortgagor shall tender to the Mortgagee, in accordance with the provisions of the note secured hereby, full payment of the entire indebtedness represented thereby, the Mortgagee as trustee, shall, in computing the amount of such indebtedness, credit to the account of the Mortgagor any credit balance remaining

under the provisions of (a) of paragraph 3 hereof. If there shall be a default under any of the provisions of this mortgage resulting in a public sale of the premises covered hereby or if the Mortgagee acquires the property otherwise after default, the Mortgagee as trustee, shall apply, at the time of the commencement of such proceedings or at the time the property is otherwise acquired, the amount then remaining to credit of Mortgagor under (a) of paragraph 3 preceding as a credit on the interest accrued and unpaid and the balance to the principal then remaining unpaid on said note.

In summary, the plaintiffs must pay monthly, with the amount necessary to repay principal and interest on the loan, a sum of money sufficient to pay the next month's portion of taxes, rents, and insurance on the mortgaged property. The defendant applies that money first to pay those bills and second to repay the loan. The defendant has made all required payments.

The contract does not require the mortgagee to pay interest on the advance payments for the time they are held by the mortgagee. Moreover, the district court found:

> It cannot be implied from such mortgage loan agreement or any of the surrounding circumstances that the mortgagee impliedly agreed to pay interest on such tendered funds. The mortgagee made no express or implied representations to the mortgagors that the mortgagee would . . . obtain an income for the mortgagors from such tendered funds.

## II

Defendant Meridian Mortgage deposits the portion of the monthly payments necessary to pay taxes, rents, or insurance into no-interest custodial bank accounts until those bills come due. The balances in these accounts are reported by the defendant as assets on financial statements distributed to regulatory agencies, credit reporting services, and other lenders to establish lines of credit and borrow funds. The plaintiffs argue that inclusion of these balances enables the defendant to qualify for lower interest rates which would not be available without the additional listed assets. It follows, the plaintiffs contend, that because the defendant improperly benefits by using the money it collects and holds in trust, it should be required to return those profits to the plaintiffs.

The plaintiffs urge two theories for relief. First, they contend that the mortgage contracts create accounts for the specific purposes of paying taxes, rents, and insurance. They argue that uses by the defendant beyond those specific purposes are breaches of contract. Alternatively, the plaintiffs argue that the mortgages create trusts for the benefit of the mortgagors to manage the monthly payments and that the defendant breaches its duties as trustee by using trust funds for purposes beyond those stated in the trust agreement.

Our task is to determine whether the trial court's rulings that the mortgage contracts did not entail requirements to pay interest or create fiduciary relationships are clearly erroneous.

■ A. The district court correctly found that the mortgages in this case do not create either the right for the plaintiffs to collect interest on the money while in the defendant's possession or the duty for the defendant to apply the money strictly to its special purposes. The mortgages are contracts, *see, e.g., Pearson v. First National Bank*, 408 N.E.2d 166, 169 (Ind.App.1980), and we will not impose upon the parties terms and requirements which are not expressed. *See generally National Steel Corp. v. L.G. Wasson Coal Mining Corp.*, 338 F.2d 565 (7th Cir.1964) ("[A] court has no power to make a new contract for the parties or by construction to write a new agreement into which the parties have not entered."); *Ethyl Corp. v. Forcum-Lannom Associates, Inc.*, 433 N.E.2d 1214 (Ind.App.1982) (Indiana applies four-corner rule; intent of parties determined by instrument itself unless ambiguity therein); *Lawrence v. Cain*, 144 Ind.App. 210, 245 N.E.2d 663 (1969) (contract means what it says on its face unless

some good reason dictates a different meaning).

B. Also, we conclude that under the terms of these mortgages the monthly payments do not constitute special deposits, and therefore the defendant's control over the funds is not restricted. Special deposits traditionally remain subject to order of the depositor. Here the monthly payments are installments on a debt. The bank is a creditor, not a depositary. Once the plaintiffs pay the defendant, they have no right to withdraw the money, demand its return, or direct its disposition by the defendant. Timely payments satisfy the plaintiffs' monthly debts created by the mortgages. In return, the defendant is bound by the mortgage contract to pay tax and insurance bills as they come due. *See Kronisch v. Howard Savings Institution,* 161 N.J.Super. 592, 392 A.2d 178 (1978).

The mortgage clauses set out above indicate that the monthly payments are not special deposits. The clauses consistently use the word "payments." Additionally, the mortgage provides for lump sum payments that first are applied to pay taxes and insurance, and then are applied to interest and principal on the loan. Although the mortgage terms specify how the mortgagee applies the funds, that alone does not create a special deposit arrangement. *Kronisch,* 161 N.J.Super. at 600–05, 392 A.2d at 182–85. Moreover, the mortgagee has the sole option to credit excess funds to subsequent payments or to return those funds to the mortgagors. This control indicates that the plaintiffs are not depositors.

C. Next we consider whether the mortgages create trusts requiring the defendant as trustee to account to the mortgagors as beneficiaries for any benefits the defendant may derive from use of the monthly payments. We again conclude that the district court was correct; despite the scattered use of the words "trust" and "trustee," and the phrase "in trust," the mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship.

The plaintiffs' argument is not new. Others have claimed that mortgage instruments—similar or identical to the V.A. form mortgage used here—created trusts for management of monthly payments. And those claims have been defeated regularly. *See, e.g., Kronisch,* and cases cited therein; *see also LaThrop v. Bell Federal Savings & Loan Ass'n,* 68 Ill.2d 375, 12 Ill.Dec. 565, 370 N.E.2d 188 (1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978); *Brooks v. Valley National Bank,* 113 Ariz. 169, 548 P.2d 1166 (1976); *Carpenter v. Suffolk Franklin Savings Bank,* 370 Mass. 314, 346 N.E.2d 892 (1976).

Simply stated, the words used in a document are not always conclusive evidence of a trust. The principal consideration is intent. *See, e.g., Dixon v. White,* 327 F.2d 434 (7th Cir.1964) (Indiana law; plaintiff failed to prove that parties intended an express trust rather than merely a debtor-creditor relationship). Several factors indicate establishment of a debt rather than creation of a trust. If the monthly payments here are insufficient to cover first the sums due for taxes and insurance, and second the monthly loan debt, then the mortgagors are in default. There are no expressed restrictions on the mortgagee's use of the monthly payments until the liability arises to pay insurance and taxes. Additionally, none of the parties ever manifested an intention to create a trust other than by signing a form document. The district court's conclusion that the mortgage instruments do not create trust relationships was not clearly erroneous.

When analyzing the mortgage agreement before it, the *Kronisch* court noted that its terms indicated that the monthly advance payments were part of the mortgage debt, and not trust contributions. The mortgage there, as the mortgage here, provided that a failure to make those payments constituted default. This clearly indicated that the bank required the advance payments as additional security for the mortgage debt. 161 N.J.Super. at 597, 392 A.2d at 180. *See LaThrop,* 68 Ill.2d at 383–84, 370 N.E.2d at

192. We apply that reasoning to the facts before us and hold that the mortgages between the plaintiffs and the defendant created debts, not trusts.

■ D. Finally, the plaintiffs urge imposition of constructive trusts upon the monthly payments, arguing that the defendant fraudulently applies the monthly payments to purposes beyond those specified in the mortgage contract. The plaintiffs deem this an "obvious violation" of the defendant's fiduciary responsibility. In support of this claim, the plaintiffs add to their previous arguments that the defend-ant acted secretly when negotiating the mortgages. The district court ruled that there was neither actual nor constructive fraud. We agree. Actual fraud, or constructive fraud presumed when a fiduciary or confidential relationship is breached, "constitutes an essential ingredient of a constructive trust." *Brown v. Brown,* 235 Ind. 563, 568, 135 N.E.2d 614, 616 (1956); *Hall v. Indiana Department of State Revenue,* 170 Ind.App. 77, 351 N.E.2d 35 (1976). We already have determined that the mortgage does not create a fiduciary relationship, and we believe that the plaintiffs have not proved actual fraud.[1]

---

1. The plaintiffs throughout their briefs rely heavily on *Wilson v. Bank of America National Trust & Savings Ass'n,* No. 643872 (Cal.Super.Ct. Aug. 10, 1982), *appeal docketed* No. A020422 (Cal.Ct.App. Dec. 1, 1982). This reliance is misplaced for several reasons. First, California law, which seemingly flows against the mainstream of judicial thinking, does not control the result in this case. The *Wilson* court found that a monthly payment "for the special purpose of pledge, to be applied upon the loan in the event of default, and if there is no default, to pay taxes and premiums, is a trust." *Id.,* slip op. at 20. The court found that Bank of America violated state law and FHA regulations by applying trust funds directly to loans and other investments. *See McGhee v. Bank of America National Trust & Savings Ass'n,* 60 Cal.App.3d 442, 131 Cal.Rptr. 482 (1976). Our review of the record here reveals no showing that the defendant violated federal regulations or federal or Indiana statutes.

Second, although not presented to this court by either party, the specific language in the *Wilson* deed of trust differs materially from the mortgages before us. That instrument reads:

TO PROTECT THE PROPERTY AND SECURITY GRANTED BY THIS DEED OF TRUST, TRUSTOR AGREES:

(a) ... to pay before delinquency, all taxes, assessments and charges affecting the property, including assessments on appurtenant water stock; to pay when due all encumbrances, charges and liens affecting or purporting to affect title to said property; to pay all costs, fees and expenses of this trust .... At the request of Beneficiary, Trustor will monthly pay to Beneficiary an amount equal to one-twelfth (¹⁄₁₂) of the annual cost of taxes and assessments on the property together with an amount equal to the estimated next fire or fire and earthquake insurance premiums divided by the number of months between the date of computation and the date of payment of the said insurance premium; said accumulated funds will be released to Trustor for payment of taxes, assessments and insurance premiums, or may be so directly applied by Beneficiary, if Beneficiary so elects....

(b) Should Trustor fail to make any payment or do any act as herein provided, then Beneficiary or Trustee (but without obligation so to do, and without notice to or demand upon Trustor, and without releasing Trustor from any obligation hereunder) may make or do the same, and may pay, purchase, contest or compromise any encumbrance, charge or lien, which in the judgment of either appears to affect said property; and in exercising any such powers, incur any liability and expend whatever amounts in its absolute discretion it may deem necessary therefor. All sums so incurred or expended by Beneficiary or Trustee shall be secured hereby and, without demand, shall be immediately due and payable by Trustor and shall bear interest at the rate of ten percent per annum; provided, however, that at the option of Beneficiary or Trustee such sums may be added to the principal balance of any indebtedness, secured hereby and shall bear the same interest as such indebtedness and be payable ratably over the remaining term thereof.

This document much more clearly creates a trust: it establishes the trustor, the beneficiary, and a separate trustee, along with designating the trust property; it confers specific powers upon the beneficiary; and the caption indicates intent to establish a trust. Moreover, unlike the mortgages we have interpreted, the *Wilson* deed of trust does not directly link the monthly payments for taxes and assessments with repayment of the loan debt. In other words, while the money for taxes and insurance paid to Defendant Meridian Mortgage is lumped together with monthly principal and interest repayments on the loan, with resulting deficiencies constituting default of the entire debt, the *Wilson* monthly payments for taxes are separate from the loan repayments and deficiencies do not constitute default.

## III

The mortgage instruments here establish standard debtor-creditor relationships; they neither imply special deposits nor create trusts for handling the required monthly advance payments. Moreover, the plaintiffs have failed to establish fraud requiring imposition of constructive trusts. Accordingly, the district court's judgment in favor of the defendant is affirmed.

AFFIRMED.

We think the language differences distinguish *Wilson* in most respects. Nevertheless, if there remain any inconsistencies on this score between our decision and *Wilson,* still we believe that this opinion, based on applicable Indiana law and what we believe are majority rules, represents the better view.

Finally, the *Wilson* court found that Bank of America acted oppressively and committed fraud because it had "a subjective, secret, undisclosed and concealed intent not to enter into a deposit for special purpose, or trust, and secretly always claimed to own impounds with secret claim of right to use them in its business and for profit, and not as collateral." *Wilson,* slip op. at 27. Again, the plaintiffs here did not prove that the defendant acted fraudulently.